UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA R. CHILDS,

      Plaintiff,    Civil Action No. 15-12250
             Honorable Thomas L. Ludington
             Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [8, 11]**

Plaintiff Barbara Childs ("Childs") brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [8, 11], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I. RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Childs is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [11] be DENIED, Childs' Motion for Summary Judgment [8] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. §405(g), this case be REMANDED to the ALJ for further proceedings consistent with this Report and Recommendation.

**II.     REPORT**

    **A.     Procedural History**

On November 16, 2010, Childs filed an application for DIB, alleging disability as of November 19, 2009.[1] (Tr. 221-22). Her application was denied initially on October 19, 2011. (Tr. 120-24). After an administrative hearing held on July 16, 2012 (Tr. 38-57), ALJ Andrew Sloss issued a written decision, dated August 6, 2012, finding that Childs is not disabled under the Act. (Tr. 97-106). On September 13, 2013, the Appeals Council issued an Order remanding the case to the ALJ for further administrative proceedings, including further evaluation of Childs' coronary artery disease and history of thyroid cancer. (Tr. 113-15).

After remand, a second administrative hearing was held on January 13, 2014, before ALJ Sloss. (Tr. 58-76). On February 27, 2014, the ALJ again denied Childs' application for DIB, finding that she is not disabled under the Act. (Tr. 16-30). On May 26, 2015, the Appeals Council denied review. (Tr. 1-4). Childs timely filed for judicial review of the final decision on June 22, 2015. (Doc. #1).

    **B.     Framework for Disability Determinations**

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ….

42 U.S.C. §423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

---

[1] Childs' date last insured is September 30, 2012. (Tr. 38, 40, 248). Thus, she must establish disability on or before that date in order to receive DIB.

2

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.   Background**

    *1.   Childs' Reports and Testimony*

In a disability report, Childs, who was born in 1966, indicated that she is 5'1" tall and weighs 155 pounds.  (Tr. 288).  She lives in a house with her husband.  (Tr. 268).  She completed high school and obtained a medical administrative assistant certificate.  (Tr. 289).  Previously, she worked as a receptionist, secretary, and delivery driver.  (Tr. 242, 289).  She stopped working on February 25, 2008, when she was fired after causing a car accident.  (Tr. 288).

Childs alleges disability as a result of diabetic neuropathy, gastroparesis, retinopathy (and

3

possible macular degeneration), coronary artery disease, arthritis, memory loss, carpal tunnel syndrome, diabetic nephropathy, and fibromyalgia. (Tr. 61, 288). She also has degenerative disc disease in both her neck and back, which limits her range of motion, and frozen shoulder syndrome, which renders her unable to lift her arms above her head. (Tr. 66-68). Childs was also diagnosed with thyroid cancer and underwent a thyroidectomy in October of 2012. (Tr. 62).

Childs experiences dizziness, fatigue, pain and numbness in her extremities, forgetfulness, vomiting, and diarrhea, and has difficulty standing and walking. (Tr. 63, 67, 253, 258, 268). On a daily basis, she has chest pain and difficulty breathing, particularly with exertion. (Tr. 62). At the time of the 2012 hearing, she was taking approximately eighteen different medications (Tr. 306); by the time of the 2014 hearing, she was up to nineteen. (Tr. 319). She also suffers from depression, anxiety, and panic attacks; has attempted suicide once; and continues to have suicidal thoughts. (Tr. 68-69, 71).

Childs spends most of her days watching television and sleeping. (Tr. 64). She has difficulty with personal care (such as getting dressed, brushing her hair, and shaving). (Tr. 254, 269). She does not prepare her own meals, because she cannot stand for very long and drops things. (Tr. 255). She is unable to do housework or yard work because she gets dizzy and sometimes passes out. (Tr. 256). She is able to shop in stores twice a month for groceries (with help). (*Id.*). She has difficulty sleeping and frequently wakes at night due to pain. (Tr. 254, 269). She no longer handles money and closed her checking account because she "would forget things and bounce checks." (Tr. 257).

    2.    *Medical Evidence*

The Court has thoroughly reviewed Childs' medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as

necessary in its discussion of the parties' arguments.

### 3. Vocational Expert's Testimony

Pauline McEachin testified as an independent vocational expert ("VE") at the 2014 administrative hearing. (Tr. 72-76). The VE characterized Childs' past relevant work as semi-skilled in nature and light in exertion. (Tr. 317). The ALJ asked the VE to imagine a claimant of Childs' age, education, and work experience, who could perform light work with the following additional limitations: frequent pushing or pulling bilaterally; occasional climbing of ladders, ropes, or scaffolds; frequent climbing of ramps or stairs; occasional balancing, stooping, crouching, or crawling; frequent kneeling; frequent handling bilaterally; no concentrated exposure to extreme heat, cold, humidity, vibrations, and hazards; no concentrated exposure to irritants such as fumes, odors, dust, and gases; and limited to unskilled work that has only occasional changes in the work setting and that involves only occasional interaction with the public. (Tr. 72-73). The VE testified that the hypothetical individual would not be capable of performing Childs' past relevant work. (*Id.*). However, the VE testified that the hypothetical individual would be capable of performing the jobs of inspector (180,000 jobs nationally), visual inspector (110,000 jobs), and general office clerk (60,000 jobs). (Tr. 73).

Childs' attorney then questioned the VE, asking her whether the hypothetical individual would be able to perform these jobs if she was limited to less than occasional pushing, pulling, handling, fingering, gripping, and grasping. (Tr. 74). The VE testified that there would be a "severe erosion of the jobs" if such limitations were necessary. (Tr. 74-75).

### D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Childs is not disabled under the Act. At Step One, the ALJ found that she had not engaged in substantial gainful

activity between November 19, 2009 (her alleged onset date) and September 30, 2012 (her date last insured). (Tr. 18). At Step Two, the ALJ found that she has the severe impairments of diabetic neuropathy, gastroparesis, carpal tunnel syndrome, cubital tunnel syndrome, major depressive disorder, and panic disorder without agoraphobia. (*Id.*). At Step Three, the ALJ found that Childs' impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 19-20).

The ALJ then assessed Childs' RFC, concluding that she is capable of performing light work with the following additional limitations: frequent pushing or pulling bilaterally; occasional climbing of ladders, ropes, or scaffolds; frequent climbing of ramps or stairs; occasional balancing, stooping, crouching, or crawling; frequent kneeling; frequent handling bilaterally; no concentrated exposure to irritants such as fumes, odors, dust, and gases; and limited to unskilled work that has only occasional changes in the work setting and that involves only occasional interaction with the public. (Tr. 20).

At Step Four, the ALJ determined that Childs is unable to perform any of her past relevant work. (Tr. 29). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Childs is capable of performing a significant number of jobs that exist in the national economy. (Tr. 30-31). As a result, the ALJ concluded that Childs is not disabled under the Act. (Tr. 31).

### E.  Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact

unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by

substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F.     Analysis**

As set forth above, after finding that none of Childs' impairments meet or medically equal a Listing, the ALJ then assessed Childs' RFC, concluding that she is capable of performing light work with the following additional limitations:  frequent pushing or pulling bilaterally; occasional climbing of ladders, ropes, or scaffolds; frequent climbing of ramps or stairs; occasional balancing, stooping, crouching, or crawling; frequent kneeling; frequent handling bilaterally; no concentrated exposure to irritants such as fumes, odors, dust, and gases; and limited to unskilled work that has only occasional changes in the work setting and that involves only occasional interaction with the public. (Tr. 20). In her motion for summary judgment, Childs argues that the ALJ's RFC finding is deficient in several respects and, thus, is not supported by substantial evidence.[2] (Doc. #8 at 24-30). The Court agrees.

---

[2] Childs also argues that the ALJ erred at Step Two of the sequential analysis in finding that several of her impairments are not severe (including her coronary artery disease, thyroid cancer, cervical and lumbar disc disease, and fibromyalgia). (Doc. #8 at 20-23). Even if the ALJ did err in this respect, however, the fact remains that he found at Step Two that Childs has other severe impairments – including diabetic neuropathy, gastroparesis, carpal tunnel syndrome, cubital tunnel syndrome, major depressive disorder, and panic disorder without agoraphobia – and proceeded to Step Three of the analysis. (Tr. 18). The law is clear that, where the ALJ proceeded to consider all of Childs' impairments, both severe and non-severe, in the remaining steps of the sequential analysis, "[t]he fact that some of [Childs'] impairments were not deemed to be 'severe' at step two is therefore legally irrelevant …." *Williams v. Comm'r of Soc. Sec.*, 2015 WL 5719676, at *3 (E.D. Mich. Sept. 30, 2015) (citing *Anthony v. Astrue*, 266 F. App'x

As the Sixth Circuit has recognized, "Residual functional capacity is defined as the most a claimant can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009) (citing 20 C.F.R. §§404.1545(a) and 416.945(a)). Pursuant to Social Security Ruling ("SSR") 96-8p:

> In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Soc. Sec. Rul. 96-8p*, 1996 WL 374184, at *6-7 (July 2, 1996). Childs argues, then, that "the ALJ was wrong to ignore many of [her] impairments, to reduce the significance of others, and to evaluate her impairments in piecemeal fashion." (Doc. #8 at 25 (citing *Mowery v. Heckler*, 771 F.2d 966, 971 (6th Cir. 1985) ("In evaluating the evidence regarding appellant's impairments we note that in this circuit they must be viewed in combination. Disability may be established by a claimant suffering from a variety of medical problems no one of which might be sufficiently disabling to prevent substantial gainful employment, but when taken together have that result.")).

From a physical perspective,[3] the ALJ found that Childs has the RFC to perform light

---

451, 457 (6th Cir. 2008) and *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). Thus, any error at Step Two in this case is harmless. On remand, however, the ALJ should thoroughly assess the severity of all of Childs' impairments, particularly in light of the Sixth Circuit's characterization of Step Two as a "*de minimis* hurdle." *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 929 (6th Cir. 2007).

[3] Childs also argues that the ALJ erred in finding that, from a mental perspective, she retains the RFC to perform unskilled work that has only occasional changes in the work setting and involves only occasional interaction with the public. (Doc. #8 at 28-29 (citing Tr. 20)). Because the Court finds error warranting remand in the ALJ's evaluation of Childs *physical* RFC, it need not consider the merits of this argument in detail. On remand, however, the ALJ should thoroughly evaluate the medical evidence pertaining to Childs' mental impairments in considering her allegations of disability.

work (which involves lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds),[4] with additional limitations, including, in relevant part, frequent climbing of ramps or stairs; frequent pushing, pulling, or handling bilaterally; and occasional climbing of ladders, ropes, or scaffolds. (Tr. 20). In reaching this conclusion, the ALJ cited favorably the opinion of state agency physician, Russell Holmes, M.D., who, on August 30, 2011, opined that Childs was limited in these exact respects. (Tr. 28 (citing Tr. 87-88)). Indeed, the Commissioner relies heavily on Dr. Holmes' opinion in arguing that the ALJ's RFC finding is supported by substantial evidence, stating, "Dr. Holmes reviewed the evidence of record and provided an opinion about Plaintiff's work-related *physical* limitations that is consistent with the RFC finding (*compare* Tr. 20 *with* Tr. 87-88)." (Doc. #11 at 10 (emphasis in original)).

The problem, however, is that Dr. Holmes issued his opinion in August 2011 and, thus, could not have taken into account evidence pertaining to Childs' medical conditions after that date. Although there is no categorical requirement that a non-treating source's opinion be based on a "complete" record, courts have recognized that, under certain circumstances, it is error for the ALJ to accord significant weight to a "stale" opinion of a non-treating source. *See, e.g., Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408-09 (6th Cir. 2009); *Blanchard v. Comm'r of Soc. Sec.*, 2012 WL 1453970, at *18 (E.D. Mich. Mar. 16, 2012); *Garber v. Astrue*, 2012 WL 1069017, at *10 (N.D.N.Y. Mar. 2, 2012) ("It is true that stale, conclusory reports of state agency officials based upon incomplete medical records may not constitute substantial evidence.").

Here, at the time Dr. Holmes issued his opinion, Childs was being treated for postural

---

[4] *See* 20 C.F.R. §404.1567(b).

10

hypotension related to diabetic autonomic neuropathy; however, it appeared that this condition was improving somewhat with the use of support hose and limited salt intake. (Tr. 385). EMG testing performed on November 5, 2010, confirmed moderate bilateral carpal tunnel and cubital tunnel syndrome, and neurologist Devinderjit Bhangu, M.D. recommended that Childs avoid repetitive hand/wrist/elbow movements and pressure over the elbows. (Tr. 377-79). Moreover, Childs had undergone a cardiac catheterization on March 29, 2011, which revealed a 70% obstruction in the left anterior descending artery. (Tr. 524-25). Cardiologist Ramesh Misra, M.D. performed angioplasty on that date and placed a drug eluting stent. (*Id.*). At subsequent visits to her primary care provider, Gerald Fulton, M.D., on May 23, 2011, and June 29, 2011, Childs continued to report shortness of breath and fatigue, particularly with exertion, but pulmonary function testing and a sleep study were normal. (Tr. 536, 550, 556, 631, 915).

After Dr. Holmes opined as to Childs' RFC, however, the record evidence suggests that Childs' existing impairments continued to worsen, while new conditions developed, none of which could have been considered by Dr. Holmes in formulating his opinion. For example, Childs continued to report intermittent chest pain and shortness of breath with exertion from October 2011 through the spring of 2012. (Tr. 629, 879-80, 885-88, 891, 896). On April 9, 2012, Childs presented to her new cardiologist, Wilfredo Rivera, M.D., reporting shortness of breath with exertion, fatigue, and back pain. (Tr. 649-50). She had a normal EKG, but Dr. Rivera suspected an under-deployed stent and recommended a second cardiac catheterization. (*Id.*). That procedure, which took place on April 10, 2012, revealed in-stent restenosis of the left anterior descending artery, and Childs underwent successful cutting balloon angioplasty with stent insertion. (Tr. 651-53). At a follow-up visit to Dr. Rivera on May 31, 2012, Childs continued to report shortness of breath that was only "mildly improved" after the April 2012

11

procedure. (Tr. 1105-06). Dr. Rivera voiced a suspicion that her difficulty breathing might be "unrelated to her coronary artery disease." (Tr. 1106). Chest x-rays performed in August 2012 showed a mildly enlarged heart, and a May 2012 CT scan of Childs' lungs showed nodular opacities in both lungs. (Tr. 981-82, 1032, 1091). Pulmonary function testing performed in October 2012 also showed mild obstructive lung disease. (Tr. 960-62).

Additionally, Childs was diagnosed with malignant thyroid cancer in 2012, which required extensive surgery of the neck, including a total thyroidectomy, in October 2012.[5] (Tr. 970-72). Her recovery from this surgery was complicated by acute appendicitis; she was admitted to the hospital from December 13-20, 2012, for further surgery and recovery. (Tr. 1060). Subsequently, she was re-hospitalized from December 22-29, 2012, with an intra-abdominal abscess (an infected hematoma). (Tr. 1059). And, less than one month later, she was back in the hospital with fluid collection in her abdomen, and she underwent interventional radiology drainage. (Tr. 1058). Childs was again hospitalized from March 8-13, 2013, with intractable nausea and vomiting; an upper endoscopy was performed, which showed ulcerative gastritis esophagitis. (Tr. 1003, 1049).

Dr. Holmes' opinion as to Childs' physical abilities is also at odds with subsequent medical records showing that she has significant orthopedic and arthritic problems with her spine, hips, knees, and shoulders. For example, on March 6, 2012, Childs saw Dianne Trudell, M.D., reporting complaints of back, hip, knee, and hand pain. (Tr. 921-23). On examination, she had diminished grip strength, decreased range of motion in both upper extremities, and tenderness over her spine. (Tr. 921-22). Dr. Trudell diagnosed Childs with "diffuse pain

---

[5] On September 17, 2012, Dr. Rivera cleared Childs for this surgery, indicating that she had an "excellent result" from the second stenting and was only experiencing occasional episodes of chest discomfort, which he was attempting to control with medication. (Tr. 957).

syndrome most consistent with fibromyalgia" and referred Childs to a pain management physician. (Tr. 923). As a result, Childs saw Angel Rigueras, D.O., on March 14, 2012, with continued complaints of chronic pain in her joints. (Tr. 940-44). Dr. Rigueras prescribed Norco for pain. (Tr. 944). By April 2012, Dr. Rigueras had switched Childs to oxymorphone because of a sensitivity to other pain medication. (Tr. 938).

In considering whether substantial evidence supports the ALJ's RFC finding, the Court's concern is not merely that all of this medical evidence exists – medical evidence which post-dates the only medical opinion as to Childs' physical limitations on which the ALJ relied – but also that the ALJ in many respects minimized or mischaracterized this evidence. For example, the ALJ twice referenced Dr. Tilli's note, in February 2012, that Childs was "doing well" from a cardiac standpoint (Tr. 24, 27) in support of his conclusion that her coronary artery disease was not severe, despite the fact that she required a second cardiac catheterization and re-stenting just over one month later. Similarly, the ALJ observed that Childs "required little treatment after April 2012" for her coronary artery disease (Tr. 27), but ignored or minimized evidence that she continued to report chest pain, difficulty breathing with exertion, and fatigue, as well as evidence of a mildly enlarged heart, nodular opacities in both lungs, and mild obstructive lung disease. (Tr. 960-62, 981-82, 1032, 1091). Likewise, in finding that Childs is capable of frequent pushing and pulling and handling bilaterally, as well as occasional climbing of ladders, ropes, and scaffolds, the ALJ found that "there is no indication of significant recent treatment for shoulder pain since 2008." (Tr. 28). Again, this misconstrues the medical evidence, which shows that Childs had decreased range of motion in both upper extremities and was taking oxymorphone for pain. (Tr. 921-22, 938). Finally, the ALJ found "no indication of limitations from thyroid cancer" (Tr. 19), despite the fact that Childs underwent extensive neck surgery

13

(including a total thyroidectomy), "continued to struggle with significant fatigue" in the months following this surgery, developed hematuria and underwent two cystoscopies because urine cytology suggested possible abnormal cells, and endured concern about "possible bladder carcinoma." (Tr. 1041-42). The medical evidence also indicates that Childs was consistently suffering from shortness of breath, fatigue, and psychological distress, resulting at least partly from her thyroid cancer diagnosis and treatment.

The Court recognizes, as the Commissioner points out, that it is not its job to "reweigh the evidence that underlies the ALJ's findings." (Doc. #11 at 13). However, a substantiality of evidence evaluation does not permit a selective reading of the record. *See, e.g., Trudell v. Apfel*, 130 F. Supp. 2d 891, 895 (E.D. Mich. 2001) ("Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.") (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)); *see also Laskowski v. Apfel*, 100 F. Supp. 2d 474, 482 (E.D. Mich. 2000) (substantial evidence "cannot be based on fragments of the record"). In other words, where, as here, an ALJ's decision selectively highlights pieces of record evidence that support his conclusion, while minimizing or failing to explain away other, significant, contrary pieces of evidence, his conclusion is not supported by "substantial evidence." *See Walker v. Comm'r of Soc. Sec.*, 2013 WL 2393178, at *13 (May 31, 2013); *see also Mukes v. Comm'r of Soc. Sec.*, 2013 WL 2179325, at *9 (S.D. Ohio May 20, 2013) (ALJ erred in failing to consider all relevant evidence and instead relying only on evidence supporting her final conclusion).

For all of these reasons, the Court cannot conclude that ALJ's RFC finding is supported by substantial evidence and, thus, recommends remand.

**III.     CONCLUSION**

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [11] be DENIED, Childs' Motion for Summary Judgment [8] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. §405(g), this case be REMANDED to the ALJ for further proceedings consistent with this Report and Recommendation.

Dated: August 5, 2016                                    s/David R. Grand
Ann Arbor, Michigan                                     DAVID R. GRAND
                                                                       United States Magistrate Judge

**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above.  *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with

a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 5, 2016.

                                             s/Eddrey O. Butts
                                             EDDREY O. BUTTS
                                             Case Manager